## JONES v. SMITH.

1. A complaint which alleges that plaintiff and one S being partners, plaintiff transferred his moiety in certain real estate to S for the purposes of the partnership, and that the partnership was now fully settled, and praying a reconveyance of such moiety to himself or a sale of the property and division of the proceeds, does not improperly unite several causes of action ; and the action was properly brought against the devisee of S, who was in possession, claiming the same as her several and absolute property.

2. In action by J against the devisee of S, to recover his share of certain lands held in S's name, but which were really the partnership property of J and S, and so held and used and so repeatedly acknowledged by S to be, both by words and acts, down to the time of his death five years before action brought, the defences of *laches*, statute of limitations, lapse of time, and adverse possession are unavailing.

3. Two partners holding land in their names jointly, one of them, just after the war, conveyed his interest therein to his copartner, and in this his action to procure a reconveyance, the complaint alleged that the deed was made by plaintiff because he "was apprehensive of embarrassment personally on account of claims outstanding against him, mostly *as surety of others; and in order to facilitate the adjustment* of the affairs of the said firm of S & J, and in order that the property of the said firm should not be embarrassed by the existence of the indebtedness then outstanding against the plaintiff in his own right," but the complaint did not say that the conveyance was executed for the purpose of defrauding plaintiff's creditors, and did state that plaintiff thereafter openly treated the property as that of the firm, whose debts were now all paid. No creditor of J was before the court. *Held,* that the complaint did not allege a fraudulent intent in this deed and so fail to state a cause of action.

4. In such an action, either party should be at liberty to apply for an order for an account of the rents and profits, although not asked for in the complaint.

Mr. Justice McIver, *dissenting.*

Before Fraser, J., Edgefield, November, 1888.

This was an action by Lewis Jones against Ella L. Smith commenced in March, 1888. The complaint was as follows:

The complaint of the above named plaintiff respectfully shows unto the court:

1st. That many years ago—anterior to the late war between the States—the plaintiff above named, and F. L. Smith, late of the county and State aforesaid, formed a partnership as coachmakers, and transacted business as such under the firm name and style of Smith & Jones; that said partnership existed for many years, and of which there was no actual dissolution until the death of the said F. L. Smith—although for many years theretofore the active operations of .the firm had been discontinued, and the same practically existed in name only.

2nd. That during the existence of said copartnership a considerable amount of property was accumulated in the firm name.

3rd. That at the termination of the late war between the States, and as a consequence thereof, the said firm of Smith & Jones was considerably embarrassed with debt; and there were many claims against numerous parties outstanding in favor of said firm,

some of which were good, some doubtful, and others of no value whatsoever; besides which the plaintiff was apprehensive of embarrassment personally on account of claims outstanding against him, mostly as surety for others.

4th. That in order to facilitate the adjustment of the affairs of the said firm of Smith & Jones, and in order that the property of said firm of Smith & Jones should not be embarrassed by the existence of the indebtedness then outstanding against the plaintiff herein in his own right, the plaintiff, on the 2nd day of October, A. D. 1868, under his hand and seal, conveyed to the said F. L. Smith his "undivided moiety and interest in all those tracts, lots, or parcels of land situate, lying, and being in the District (now County) of Edgefield, and State aforesaid, in the village of Edgefield, viz.   *   *   *

5th. That notwithstanding the execution of the said instrument in writing, the use, occupation, enjoyment, and ownership of the property described in the next preceding paragraph hereof were in no wise changed or affected thereby, but in all respects remained thereafter as they had existed theretofore, and it was fully and distinctly understood and agreed that said interest, or moiety, was to be reconveyed to this plaintiff upon the completion of the adjustment of the affairs of the old firm of Smith & Jones.

6th. That it was distinctly understood and agreed by and between the plaintiff and the said F. L. Smith, that the use, occupation, enjoyment, and ownership of said property were in no wise to be affected by the execution of said instrument in writing; and with said understanding and agreement the said F. L. Smith remained perfectly satisfied until the day of his death, and oftentimes expressed his willingness and purpose to reconvey the said moiety to the plaintiff.

7th. That thereafter, and up to the time of his death, the said F. L. Smith, on repeated and numerous occasions, and to divers persons, acknowledged the joint ownership of the plaintiff with himself in said property.

8th. That after the execution of said instrument in writing, as effectually and as openly as theretofore, the plaintiff, with the full knowledge and approval of the said F. L. Smith, exercised

35—31

acts of ownership over the said property ; made and entered into contracts for the rent or lease thereof, received the rents, issues, and profits thereof, paid taxes thereon, and otherwise.

9th. That all and singular the claims which existed in favor of and against the firm of Smith & Jones, have been settled, as far as they can ever be settled, so. that they no longer exist.

10th. · That heretofore the said F. L. Smith departed this life, leaving of force his last will and testament, wherein and whereby he devised all and singular his estate—of every kind and description whatsoever and wheresoever situate—to his widow, the defendant herein.

11th. That oftentimes heretofore—directly and indirectly—the plaintiff has demanded of the defendant compliance with the agreement between the said F. L. Smith and himself to reconvey the said interest in the said property, with which reasonable request she has refused, and still refuses, compliance.

Wherefore the plaintiff prays that the defendant may be required to reconvey to the plaintiff his moiety in all and singular the property mentioned and described in paragraph four hereof; or that all and singular the said property may be sold and the proceeds thereof equally divided between the plaintiff and defendant; and that the plaintiff may have such other and further relief as the nature and circumstances of the case may require, together with his costs.

The decree of the Circuit Judge and other matters are fully stated in the opinion of this court.

*Messrs. Ernest Gary* and *W. T. Gary,* for appellant.

*Messrs. Sheppard Bros.,* contra.

November 22, 1889. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. Many years ago, before the late Confederate war, one F. L. Smith and the plaintiff, Lewis Jones, were partners in the business of carriage making, under the name and style of "Smith & Jones." Their business seems to have prospered, and besides other property, tools, outfit, plant, &c., the partnership owned four small lots in the town of Edgefield,

connected with their business, which for convenience we will designate as (1) the Smith & Jones carriage shops, (2) the Golding lot, (3) the Christie workshop, and (4) the blacksmith shop. At the end of the late war the business was very much reduced and broken up, but the firm had a large unsettled business, many debts were due to it, some of which were good, but many doubtful or desperate, and the firm itself was considerably embarrassed by debts which it owed, besides, as complaint states, "the plaintiff was apprehensive of embarrassment personally on account of claims outstanding against him, mostly as surety for others; that in order to facilitate the adjustment of the affairs of Smith & Jones, and in order that the property of the said firm should not be embarrassed by the indebtedness then outstanding against the plaintiff in his own right, on October 2, 1868, under his hand and seal, conveyed to the said F. L. Smith, his partner, his 'undivided moiety and interest' in all the aforesaid lots; that notwithstanding the execution of the said instrument in writing, the use, occupation, enjoyment, and ownership of the property described, were in no wise changed or affected thereby, but in all respects remained thereafter as they had existed theretofore, and it was fully and distinctly understood and agreed that said interest or moiety was to be reconveyed to the plaintiff upon the completion of the adjustment of the affairs of the old firm of Smith & Jones;" that the said Smith always acknowledged the joint ownership of the plaintiff with himself in said property.

The condition of affairs remained in this state, both admitting joint ownership, subject to the payment of the debts of the firm, until Smith died some four or five years ago (the precise date not stated) leaving a will by which he gave his whole estate to his widow, *Ella L. Smith*, and she claiming under her husband's will, and denying the joint interest of the parties in the lots after the deed of 1868, set up a claim in herself as the absolute and several owner of said lots; and thereupon the plaintiff, all the debts of the firm having been paid or settled, instituted this action against her for *partition* or the sale and division of the proceeds of said lots.

The defendant answered, admitting the original partnership between the plaintiff, Lewis Jones, and her late husband; deny-

ing, however, as a matter of fact, that there had been any joint use and occupation of the lots after October, 1868, when the partnership was dissolved, and her late husband purchased and paid for Jones's interest in the lots and was ever after until his death in exclusive adverse possession as the several and absolute owner thereof. She interposed several defences : (1) *laches* and lapse of time; (2) that the alleged parol agreement to reconvey after the partnership debts were paid, was repugnant to the statute of frauds; (3) that the cause of action did not accrue within six years; (4) that devisor of defendant had been in adverse possession for more than ten years; (5) that the warranty of the plaintiff in his deed estops him from claiming any interest in the lots; (6) that the action should have been brought against the personal representative (administrator or executor), instead of the devisee of Smith, the late partner; (7) that the plaintiff had improperly joined several causes of action in one, &c.

The cause came on to be heard by Judge Fraser, before whom the testimony was offered in open court. It appeared that on October 1, 1868, the day before the conveyance of the lots in contention (October 2), Jones transferred and assigned all his interest in all the personal property of the firm, such as carriages, buggies, &c., to his partner, Smith, in consideration as stated of $1,000, and that the said Smith would pay all the outstanding debts of the firm. It further appeared from abundant and uncontradicted testimony that Smith & Jones continued to hold, rent, and use the lots as partnership property during the life of Smith, &c. The judge held, among other things, "that from the date of the deed (October 2, 1868) to the death of Smith, a period of nearly fifteen years, all of the lots were returned for taxes in the firm name of Smith & Jones, and taxes paid thereon accordingly. The control was joint and the rents were divided between the two, and in 1872 or 1873 a written lease, now lost, of all or a large portion of these lots was executed by Smith, by which Smith & Jones were made by him parties of the one part, and one Robert Schley, the tenant, the other party. When the property was leased to Schley, Smith & Jones took one-half of the profits between them, &c. From all this testimony I conclude that these lots were at one time partnership property, and

that, though there may have been a termination of the partner-
ship as to future transactions, by the deeds of the 1st and 2nd of
October, 1868, there never has been a final settlement between
the parties of their interest in the partnership property (*Pars.
Part.*, 386). As to the real estate, it is not material in whose
name the title stands. It may be in all the members of the firm,
or in the name of a stranger, and it is held in trust for the firm.
It is not necessary that the trust be expressed, if it exists, and is
capable of proof, and the land be in part and in substance part-
nership property (*Pars. Part.*, 364, 365). When the title is in
the name of one member of the firm, the presumption is that it
is his individual property until shown to belong to the firm. 'For
this purpose parol evidence is admissible between the parties and
their representatives to show that a conveyance to a partner was
for the benefit of the firm. The same evidence which could make
it partnership property for the payment of debts and adjusting the
equities between the parties, established it for the purpose of final
division.' *Abb. Trial Evid.*, 228, 229." And he ordered the
lots sold for partition.

From this decree the defendant appeals upon the following
grounds :

I. "Because his honor erred in overruling the defendant's oral
demurrer, that the complaint showing on its face that the cause
of action was made in fraud of the creditors of the plaintiff, and
that the cause of action stated therein is a complete bar at law
to the recovery of the said plaintiff.

II. "Because his honor erred in deciding that the plaintiff
could offer parol testimony, falsifying and contradicting the terms
of the written deed.

III. "Because his honor erred in not deciding that the plain-
tiff was estopped by his covenant of warranty in his said deed
from asserting any claim to the property described in his said
complaint.

IV. "Because his honor erred in allowing the plaintiff to intro-
duce parol proof of an alleged agreement with reference to a
reconveyance of the lots of land described in the complaint, the
said proof being repugnant to the statute of frauds.

V. "Because his honor erred in decreeing that the plaintiff

was entitled to one-half interest in the several lots of land described, said plaintiff having failed to show by competent proof that he had any interest in the same.

VI. "Because his honor erred in assuming that the allegations of the complaint were true, he having ruled that the plaintiff could not testify as to the transactions between him and the deceased Smith. And the plaintiff having failed to prove the allegations of the complaint by any testimony save that of himself, which was incompetent and ruled inadmissible.

VII. "Because his honor erred in deciding that there had been no adverse possession to give title under the statute of limitations.

VIII. "Because he erred in deciding that his (plaintiff's) 'use and occupation was jointly with Smith, and for less than twenty years.'

IX. "Because his honor erred in deciding that 'the control of said lots was joint and the rents were divided between the two.'

X. "Because his honor erred in deciding that said real estate was partnership property, and held in trust for the firm.

XI. "Because the decree is against the evidence, the weight of evidence, and without evidence to support it," &c.

The action was for *partition* of certain lots as partnership property of the firm of Smith & Jones; and, of course, involved the issues of partnership and of joint ownership. We do not see that several causes of action were improperly joined. All the questions made were "connected with the same subject of action." Nor do we think that the action was improperly brought against the defendant, who claims the lots in contention as her several absolute property under the will of her late husband, F. L. Smith, the alleged partner of the plaintiff.

Although the plaintiff himself could not testify as to the alleged parol agreement with his partner, Smith, who is now dead, it nevertheless did appear from other competent testimony, and the Circuit Judge as matter of fact so found, that there had been a partnership between the deceased, Smith, and the plaintiff, which owned these lots; that there never had been any formal dissolution of the firm or a final settlement and division of the property; and that after the execution of the deed of October 2, 1868, the lots in question were openly and publicly held, used, and enjoyed

as still partnership property down to the death of Smith, as stated to be some four or five years before the commencement of this action. This finding is well sustained by the testimony of disinterested witnesses; and, as we think, effectually answers the defences of lapse of time, *laches*, adverse possession, and the statute of limitations. The parties holding jointly, the statute of limitations did not run. The defendant claims under her husband, Smith. She is entitled to no higher rights than he had. Surely, if Smith were living and the action were against him, he would not have made the defences of lapse of time, adverse possession, &c., in the very face of his repeated admissions and declarations that the aforesaid lots were still as between the partners, held as partnership property, and a consistent, steady, and unbroken course of conduct on his part in the same line, for more than fifteen years and down to his death. Most probably if Smith had lived, the question made here would never have arisen. *Lord* v. *Lowry*, Bail. Eq., 510.

This view, it seems to us, effectually disposes of all the questions in the case, except, it may be, the point made in argument on the motion to dismiss the complaint, for the reason that it did not state facts sufficient to constitute a cause of action, which, as we understand it, was formulated in the first ground of appeal: "Because his honor erred in overruling the defendant's demurrer to the complaint, the said complaint showing on its face that the cause of action therein was made in fraud of the creditors of the said plaintiff, and that the cause of action stated therein is a complete bar at law to the recovery of the said plaintiff." In considering the demurrer, the facts stated in the complaint must be assumed to be true. (The complaint should appear in the report of the case.) It will be observed also that there is here no question as to the rights of creditors, either of the firm or of its members individually, but that it is a question pure and simple between the parties.

Did the plaintiff state himself out of court? In speaking of the object of the deed of 1868, after stating that the firm was embarrassed, he proceeded as follows: "Besides which, the plaintiff was apprehensive of embarrassment personally on account of claims outstanding against him, mostly as surety of others; that

in order to facilitate the adjustment of the affairs of the said firm of Smith & Jones, and in order that the property of said firm should not be embarrassed by the existence of the indebtedness then outstanding against the plaintiff in his own right," the plaintiff executed the deed, &c. The conveyance of his interest by Jones to his partner was certainly not in fraud of the co partnership creditors ; for whether the title was in one or both partners, it was alike liable for partnership debts. Lands owned by a partnership are not held by the members as tenants in common, but as joint tenants, and the conveyance by one partner of his interest carries no more than a right to an account. "A joint tenancy resulted from the union of the partners, and took its character from the purpose of the joinder. The contract creates the relation of partnership, and invests the partners with an estate by entireties during the continuance of the firm. That is to say, until the final settlement of the account * * each partner has a vested right, which no dissolution can destroy, to apply the firm property to the payment of firm debts. The title is joint, but neither partner can dispose of the general property nor any portion of it, or of his individual interest, except in subordination to the obligations of his relation, and in accordance with the rules by which it is governed," &c. See *Pars. Princ. Part.*, § 100, and notes.

Now as to the individual creditors of the plaintiff, Jones. Does the complaint admit that the conveyance to his partner was made for the purpose of defrauding his individual creditors ? Considering that fraud is not to be presumed, but must be proved, and taking the statements of the complaint as a whole, we cannot see that there was any admission that the deed was made to "defeat, delay, and hinder" the individual creditors of Jones. At the time the deed was executed (1868), soon after the war, all commercial affairs were in great confusion. Securities were uncertain, and were unreliable if not entirely worthless. The partners manifestly desired to separate the partnership from individual property, and especially for the purpose of "disembarrassing the affairs of the firm." For keeping the property of the firm separate, the plaintiff gives two reasons, first, that the firm was embarrassed, and, second, his apprehension that he might be per-

sonally. But there is no expression in the complaint which indicates that the plaintiff conveyed his interest to his partner for the purpose of defrauding his creditors, and no creditor is here complaining. This court has lately held that partnership property is first liable for the payment of partnership debts, and that an assignment of it for that purpose is not fraudulent as against an individual creditor, who is only entitled to participate in what may come back to his debtor after the settlement of the partnership debts. *Trumbo, Hinson & Co.* v. *Hamel & Co.*, 29 S. C., 520. We cannot say that the Circuit Judge committed error in holding that the statements in the complaint as to the purpose for which the deed of October 2, 1868, was executed, do not make such a case of fraud as should deprive the plaintiff of his remedy as against the devisee of his late partner.

An account is not asked, but it is the usual incident of the settlement of a partnership, and if the parties, or either of them, move for an account of the rents and profits of the lots in question since October, 1868, we incline to think it should be granted.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON. In concurring in this judgment herein, I do not doubt or deny the salutary doctrine on which Mr. Justice McIver rests the first branch of his dissent, to wit, that a *particeps doli* cannot be relieved by a Court of Equity. I do not think, however, that the facts of the case bring it under that wise principle. There was certainly no fraud on the partnership creditors, because the intention of the conveyance of the lots was to make partnership property first liable for partnership debts, precisely what the law required. Nor was there fraud on the individual creditors, because the lots after the conveyance being still partnership property, of which there seems to have been abundant evidence, growing out of the manner in which the partners continuously dealt with them up to the death of Smith, were still liable for the individual debts of Jones, if any, after the partnership debts had been paid. Nor do I think that the decree of the Circuit Judge was inappropriate to the character of the action or the allegations of the complaint. The complaint

alleged substantially that the lots were partnership property; that they were conveyed to adjust partnership debts, which having been adjusted, the property reverted to the partners. The Circuit decree seems to give relief in accordance with these facts as found by the Circuit Judge.

MR. JUSTICE McIVER, *dissenting.* This case may be considered in two aspects: 1st, that presented by the demurrer. 2nd, that presented by all the pleadings and the evidence. In either aspect, it seems to me clear that the action cannot be maintained.

In 1 *Pomeroy Equity Jurisprudence,* sec. 401, the principle is laid down in the following words: "Whatever be the nature of the plaintiff's claim, and of the relief which he seeks, if his claim grows out of, or depends upon, or is inseparably connected with his own prior fraud, a Court of Equity will, in general, deny him any relief, and will leave him to whatever remedies and defences at law he may have." For example: "If a contract has been entered into through fraud, or to accomplish any fraudulent purpose, a Court of Equity will not, at the suit of one of the fraudulent parties—a *particeps doli*—while the agreement is still executory, either compel its execution or decree its cancellation, nor, after it has been executed, set it aside, and thus restore the plaintiff to the property or other interests which he had fraudulently transferred. Equity will leave such parties in exactly the position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent participants." This salutary and most wholesome principle has been fully recognized both by the courts of law and equity in this State (*Broughton* v. *Broughton,* 4 Rich., 491; *Arnold* v. *Mattison,* 3 Rich. Eq., 153), and may now be considered too well settled to admit of dispute.

The practical inquiry, then, is, whether this case falls under that well settled principle; and as the question is presented by a demurrer to the complaint, the inquiry is narrowed down to the question, whether the plaintiff's case, as stated in his complaint, falls within the principle above stated. Inasmuch as the complaint will doubtless be fully set out in the report of this case, it will only be necessary here to state, in general terms, the allegations of the complaint, which are substantially as follows: that

many years since, prior to the late war between the States, the plaintiff and one F. L. Smith formed a copartnership in the coach-making business, under the name of Smith & Jones, of which there was no actual dissolution until the death of Smith, although, for many years prior thereto, the active operations of the firm had been discontinued, and the same practically existed in name only; that during the existence of the partnership, a considerable amount of property was accumulated in the firm name; that at the close of the war, the said firm was considerably embarrassed with debt, "besides which, the plaintiff was apprehensive of embarrassment personally on account of claims outstanding against him, mostly as surety for others; that in order to facilitate the adjustment of the affairs of the said firm of Smith & Jones, and in order that the property of the said firm of Smith & Jones should not be embarrassed by the existence of the indebtedness then outstanding against the plaintiff herein in his own right, the plaintiff, on the 2nd day of October, A. D. 1868, under his hand and seal, conveyed to the said F. L. Smith his undivided moiety and interest" in the several lots of land which constitute the subject of this action; that notwithstanding said conveyance, "the use, occupation. enjoyment, and ownership" of said property "were in no wise changed or affected thereby," * * * "and it was fully and distinctly understood and agreed that said interest or moiety was to be reconveyed to this plaintiff upon the completion of the adjustment of the affairs of the old firm of Smith & Jones"; that it was distinctly understood and agreed between the plaintiff and said F. L. Smith, "that the use, occupation, enjoyment, and ownership of said property" were to be in no wise affected by said conveyance, and that with such agreement the said F. L. Smith remained perfectly satisfied up to the time of his death, and frequently expressed his willingness to reconvey to the plaintiff; that up to the time of his death, said F. L. Smith repeatedly acknowledged the joint ownership of the plaintiff with himself in said property; that after the execution of said conveyance, the plaintiff, with the full knowledge and approval of said F. L. Smith, has exercised various acts of ownership over said property; that all the claims in favor of and against Smith & Jones have been settled; that said F. L. Smith has departed this life, leaving a

will, whereby he gave all his property to his widow, the defendant herein; that plaintiff has demanded of defendant compliance with the agreement of said F. L. Smith to reconvey the said moiety of said property to him, which she refuses to do; wherefore judgment is demanded, that defendant may be required to reconvey to the plaintiff his moiety in all the property embraced in the conveyance above referred to, or that the same may be sold and the proceeds equally divided between plaintiff and defendant.

From this abstract of the allegations of the complaint, it seems to me plain that the plaintiff, by this action, is seeking to enforce the specific performance of a contract, one of the objects, if not the sole object, of which was to accomplish a fraudulent purpose. It cannot be denied that where a debtor makes a conveyance of his property with a view to defeat, delay, or hinder his creditors in the enforcement of their claims, equity will pronounce such a transaction fraudulent, even though it may appear that the debtor did not intend to commit any moral fraud, for the law will not permit a debtor to throw obstructions in the way of legal process, and thus hinder and delay creditors in the prosecution of their legal rights. Hence, even if it be assumed, as I am quite willing to do, that the plaintiff intended no moral wrong in making this conveyance, yet if it was prompted, by the apprehension, that, otherwise, his individual creditors would seize upon his interest in the property and subject it to the payment of their debts, the law will regard such a conveyance as fraudulent, and equity will afford no relief from its consequences.

That such was the purpose of the conveyance in question, it seems to me clear, from the plaintiff's own statements of the motive which prompted it. I do not see what other construction can be placed upon the language used in the complaint, for, after setting forth the fact that the firm of Smith & Jones "was considerably embarrassed with debt"—not that its assets were insufficient for the payment of its debts—these words are added, "besides which, the plaintiff was apprehensive of embarrassment personally on account of claims outstanding against him, mostly as surety for others," followed by the allegation, "that in order to facilitate the adjustment of the affairs of the said firm of Smith &

Jones, and in order that the property of said firm of Smith & Jones should not be embarrassed by the existence of the indebtedness then outstanding against the plaintiff herein in his own right," the conveyance in question was made. Now, while it is very easy to see how the transfer of the title to these lots by the plaintiff to Smith would throw an obstacle in the way of the individual creditors of the plaintiff, in subjecting the property conveyed, or the plaintiff's interest therein, to the payment of their debts, and thus hinder and delay them in the prosecution of their claims, it is impossible to understand how such a conveyance would facilitate the adjustment of the affairs of Smith & Jones, especially when the plaintiff also alleges that it was distinctly agreed that the plaintiff's moiety or interest in the lots was to be reconveyed to him "upon the completion of the adjustment of the affairs of the old firm of Smith & Jones," for this allegation effectually excludes the idea that the plaintiff's moiety was intended to be used in settling the debts of Smith & Jones, because, if so used, then the distinct agreement, that the plaintiff's moiety should be reconveyed to him upon the completion of the adjustment of the affairs of Smith & Jones, could not possibly have been carried out.

In addition to this, if the lots in question were in fact partnership property, and, as such, primarily liable for the partnership debts, as the plaintiff in his argument claims, though there is a singular absence of any such allegation in the complaint, then it is very difficult, if not impossible, to conceive how the transfer of the title to such lots to one of the individuals composing the partnership, would tend to facilitate the adjustment of the affairs of the partnership. On the contrary, the tendency would be the other way. For, after such transfer, it would be necessary for the partnership creditors, in order to fix a primary liability on such property, to show that, although the title stood in the individual name of one of the copartners, yet in fact it was partnership property; whereas, before such transfer, no such showing would have been necessary, if in reality the title to the property originally stood in the names of the two partners jointly. It seems to me, therefore, that the inevitable inference to be drawn from the language of the complaint, is that the real object and

true intent of the conveyance was to place the property, temporarily at least, beyond the reach of the individual creditors of the plaintiff, and if so, then, under the principle above stated, the complaint stated no such cause of action as a Court of Equity would recognize, and hence the demurrer should have been sustained.

The fact that there are no individual creditors of the plaintiff before the court complaining cannot affect the question, for the principle invoked does not rest upon the right of such creditors to obtain relief, but is founded upon considerations of public policy, which forbid a Court of Equity from lending its aid to relieve a person from a situation in which he has voluntarily placed himself in an attempt to accomplish a fraudulent purpose.

It seems to me, also, that there is another ground upon which the demurrer should have been sustained, to wit, that the complaint does not state facts sufficient to constitute a cause of action. Assuming all of the allegations to be true, the cause of action there stated is the refusal of the defendant to perform specifically a verbal agreement entered into by her devisor to reconvey real estate conveyed to him by the plaintiff by a conveyance confessedly sham and pretensive; for what else can the allegation, repeated in various forms, mean? that, notwithstanding the conveyance, it was distinctly understood and agreed that "the use, occupation, enjoyment, and ownership of the property" conveyed should be "in no wise changed or affected thereby," but should, in all respects, remain as before, followed by the allegation, that in accordance with the understanding, the grantee, up to the time of his death, acknowledged the joint ownership of the plaintiff. Such allegations are clearly not sufficient to sustain an action for the specific performance of a contract.

If, however, the case be considered in the aspect in which it is presented by the pleadings and evidence, it seems to me equally clear that the plaintiff cannot maintain his action. The case as made by the complaint, is nothing more nor less than an action for the specific performance of an alleged agreement by F. L. Smith to reconvey the property in question to the plaintiff "upon the completion of the adjustment of the affairs of the old firm of Smith & Jones." Inasmuch as such agreement was distinctly

denied in the answer, and there was not the slightest evidence in
writing of any such alleged agreement, and no evidence of any
such part performance as would take the case out of the statute
of frauds, it is quite certain that the action could not be main-
tained as an action for the specific performance of an agreement
to reconvey; and so I understand the Circuit Judge to hold.
Indeed, leaving out the testimony of the plaintiff, which was
clearly incompetent, as to any transactions or communications
with the deceased, Smith, under section 400 of the Code, and so
ruled to be by the Circuit Judge, without exception, it seems to
me very difficult to find any, even parol, evidence of such an
agreement. The most that can be said is that the acts and declar-
ations of F. L. Smith did tend to show that he recognized the
joint ownership of the plaintiff, and one of his declarations, testi-
fied to by plaintiff's witness, Schley, that he took the title from
Jones for the purpose of screening it from the creditors of Jones,
throws a flood of light upon the real object and intent of the con-
veyance, and shows it to have been exactly what Jones himself
plainly shows by the allegations in his complaint.

The Circuit Judge, however, after holding that "if this were a
case originating between joint tenants or tenants in common,
plaintiff's case would fail because he could not be allowed to
establish his claim by parol evidence." proceeds to consider the
case as if it were an action for a final settlement of the affairs of
the original partnership by a sale of the lots of land embraced in
the conveyance hereinbefore referred to as partnership property;
and holding that in such a case parol evidence would be compe-
tent to show that said lots were still partnership property, not-
withstanding the conveyance of Jones's interest therein to Smith
as far back as 2nd October, 1868, reaches the conclusion that the
evidence adduced established that fact, and ordered that said lots
be sold and the proceeds be divided equally between plaintiff and
defendant.

Passing by the question of the right of the Circuit Judge, pend-
ing or after the hearing, to thus change the whole aspect of the
case, as made by the pleadings (*Dunsford* v. *Brown*, 19 S. C.,
560), and convert an action for the specific performance of a con-
tract into an action for the settlement of the affairs of a partner-

ship, I propose to consider whether the decree can be sustained even under the aspect in which the case seems to have been considered below. To do this, it would be necessary for the plaintiff, amongst other things, to allege and prove that the lots in question were partnership property, and so continued to be up to the time of the commencement of this action. As has been said, the complaint contains no allegation—certainly no distinct allegation—that these lots ever were partnership property. The second allegation of the complaint is, "That during the existence of said copartnership, a considerable amount of property was accumulated in the firm name," but there is no allegation as to what was the nature of such property—certainly none that these lots constituted a part of such property. The nearest approach to any such allegation is that found in the 4th paragraph of the complaint, in these words: "That in order to facilitate the adjustment of the affairs of the said firm of Smith & Jones, *and in order that the property of said firm of Smith & Jones* should not be embarrassed by the existence of the indebtedness then outstanding against the plaintiff herein in his own right," the plaintiff conveyed to said F. L. Smith, on the 2nd October, 1868, his undivided moiety or interest in the said lots.

Now, while the words italicized in the foregoing quotation might possibly, if admitted or proved, be sufficient to warrant the inference that the lots in question constituted a part of the property of the firm of Smith & Jones, yet all that portion of the complaint copied above is distinctly denied in the answer, and, so far as I can discover, there is not a particle of evidence to sustain the allegation made, only by implication in the complaint, that the lots were property of the firm. There is no evidence that they were purchased with partnership funds, or in any other way became partnership property. On the contrary, the only evidence is that they were owned by Smith & Jones in equal moieties, and there is not a particle of evidence tending to show how or when they were acquired, though if the plaintiff, as he claims, was the surviving partner, he must be presumed to have had it in his power to show by the deeds, or otherwise, whether they were acquired as partnership property; and this he made no attempt to do. In addition to this, in the conveyance, a copy of which is

set out in the "Case," these lots are not spoken of as partnership property, but the "undivided moiety and interest" of the plaintiff in certain lots, one of which is described as "now *occupied*"—not *owned* or formerly owned—by Smith & Jones, coach-makers.

But, again, even if the conclusion could be reached, that these lots ever were partnership property, they certainly lost that character nearly twenty years before this action was commenced. For we find in the "Case" a copy of a paper executed on the 1st day of October, 1868, whereby the plaintiff, one of the firm of Smith & Jones, "in consideration of one thousand dollars, to me in hand paid by F. L. Smith [the other partner in the firm above mentioned], and in further consideration that he, the said F. L. Smith, assume and hereafter pay the outstanding debts of the said firm," sells and transfers to said F. L. Smith all his right and interest in and to all and singular the vehicles, finished and unfinished, also "all the harness, stock materials, tools, lumber, &c.," belonging to said firm, and also all the notes, book accounts, and choses in action of whatsoever nature due to the said firm ; and on the very next day (2nd October, 1868) conveys to said Smith, "in consideration of two thousand dollars, to me paid by Frederick L. Smith," the lots in question, with a full warranty of title.

If these papers did not operate a dissolution of the partnership, even if the lots ever were partnership property, and a final settlement of its affairs as between the copartners, it is very difficult to conceive what would produce such a result. After one of two copartners sells out his entire interest in the partnership, for a stated valuable consideration, the payment of which is acknowledged, to the other, who assumes payment of the debts of the firm, it is impossible to see what remains for settlement between them. And when, in addition to this, these transactions, thus evidenced by a formal deed and bill of sale, are allowed to stand unquestioned for a period of nearly twenty years, and no effort is made to question them until some four or five years after the death of the partner, who has thus bought and paid for the interest of his former copartner, and has devised the property conveyed to him to another, it seems to me that it is asking a great deal of a Court of Equity, at this late day, and more than any court should grant, to unravel these transactions, and permit the plain-

36 -31

tiff to ignore and contradict his solemn deed of conveyance and formal warranty, and place him in the same, or rather in a better, condition than he was when he made such conveyance, and received valuable consideration therefor, upon the ground that the conveyance, which he is now seeking to get rid of, if not made with a view to hinder and delay his individual creditors, whose claims are now probably barred by lapse of time, was confessedly made as a mere sham and pretence, and not intended to effect any change whatever in "the use, occupation, enjoyment, and *ownership*" of the property conveyed.

This, as I have said, would be placing the plaintiff in a better position than he occupied before making the sham conveyance, which he is now seeking to avoid. For prior thereto, he was equally responsible with Smith for the debts of the firm; but when Smith assumed payment thereof, and, as must be assumed, paid them, as it is admitted that the debts have all been settled, and there is no pretence that plaintiff ever paid any part thereof, plaintiff would now be relieved from that liability, and yet restored to his interest in the property for which Smith had already paid him. The deeds show an acknowledgment of the payment of the consideration mentioned therein, and although this might be contradicted by any competent evidence, yet there is not a particle of competent evidence to that effect, the testimony of plaintiff to this effect being clearly incompetent, and so ruled by the Circuit Judge, to which ruling there is no exception.

In view of what has been said, and in the face of the express terms of the deed, which are uncontradicted by any competent evidence, I do not see how the Circuit Judge could reach the conclusion, "that though there may have been a termination of the partnership as to future transactions by the deeds of the 1st and 2nd October, 1868, there has never been a final settlement between the partners of their interest in the partnership property." But reaching that conclusion, he seems to hold, although the complaint is not framed with any such aspect, that the property conveyed by the deed of 2nd October, 1868, was impressed with some sort of trust, which, though not expressed, is still capable of proof, and he finds such proof in the testimony of the continued acknowledgment by Smith of plaintiff's joint interest after the

conveyance was made and up to the time of his death. But while there is abundant evidence of such acknowledgments, the only testimony that I am able to find indicating the trust (if any), is that proceeding from the plaintiff's witness, Schley, which shows that if the property was held by Smith upon any trust, it was to protect it from the individual creditors of the plaintiff; and surely no Court of Equity would lend its aid in the enforcement of such a trust.

It seems to me, therefore, that in any view of the case, the judgment below should be reversed and the complaint dismissed.

Judgment affirmed.